The next case today is Gilberto Pereira Brito et al. v. William P. Barr et al. Appeal number 201037 and appeal number 201119. Attorney McFadden. Good morning. May it please the court. My name is Dan McFadden and I'm appearing on behalf of the appellants and cross appellees in this case who were the petitioners and the class members below. May I please reserve one minute for rebuttal? Yes. Thank you, Your Honor. I know it's been a long morning and into the afternoon, so I would just like to quickly address four points. First, regarding the burden of proof in 1226A bond hearings. Second, regarding the evidentiary record in our case. Third, regarding the standard of proof for flight risk, which is the subject of our cross appeal. And lastly, just to explain why class-wide injunctive relief is available, notwithstanding section 1252F1. First, regarding the burden of proof for 1226A bond hearings, we agree with the petitioners who have gone before us today that all people in the United States are protected by the Due Process Clause. We know that from its advitas. And under those protections, the general rule is that liberty is the norm and detention a carefully limited exception. And we know that that rule is embodied in a line of cases that includes Salerno and Foucha and Addington. And so under that general rule, civil detention has to be carefully limited to advance an overwhelming government interest. And that is why the government must bear a burden to prove a reason why it's putting someone in jail and also has to provide other strong procedural protections. And we also know that this general rule applies in the context of immigration because in its advitas, the Supreme Court relied on this rule and cited this line of cases. Contrary to the government's arguments, D'Amour v. Kim does not override this general rule. D'Amour v. Kim is a narrow exception to the general rule. In that case, Congress has specifically commanded under section 1226C that noncitizens with certain criminal convictions shall be detained, evidently because it found that those convictions are a proxy for flight risk or dangerousness. And the Supreme Court ruled that Congress, under its immigration powers, could command a deviation from the general rule, at least for a brief period of time where removability had been conceded. Here, D'Amour has no applicability because Congress has not commanded that our class members shall be detained. It has not commanded that they should be detained by default. It has not commanded that our class members should bear any burden of proof to secure their release. In fact, as the government successfully convinced the Supreme Court in Jennings, section 1226A is silent on the procedures for the detention hearing. Additionally... Counsel, the point is made that what Congress was clear about was that the Attorney General has discretion in this area. And what we see in play with the way in which 1226A proceedings go forward, we see in effect that exercise of discretion. How do you respond to that? Your Honor, I think what the government points to is the use of the word may in 1226A as conferring discretion. And that's also an argument that they raised in Zidvitas. And in Zidvitas, the Supreme Court rejected that argument and said that mere use of the word may effectively does not confer unlimited discretion. It confers discretion to act within normal constitutional limits. That is essentially the message from Zidvitas regarding that word. And that's exactly what we're arguing here. That, yes, the word may conveys a degree of discretion, but all discretion can be abused, particularly if an executive agency acts outside the limits of the Constitution. What do you say to the point that was made in the briefs in your case and in oral argument previously? You just heard that, well, even the dissenters in some of these cases presumed that the existing rules of burden on the alien would apply. Your Honor, I think that there has not been a Supreme Court case that addresses the constitutionality of the burden allocation under 1226A. There have been some cases where courts have referenced the existence of the existing rules, but I don't believe the Supreme Court has ever addressed specifically the constitutionality of this statute or what procedures would be required to create someone's liberty under this statute. Your Honor, I do also briefly want to address the evidentiary record in our case. Here, to the extent the court were to look into the Matthews v. Eldridge analysis, I think it's important to point out this case was decided on summary judgment. And so if we're looking at the government interest, we should look to what evidence the government submitted to support that it had an interest in the burden being on the noncitizen or what cost to the government would be incurred if the burden were shifted to the government. And what's telling here is the government submitted no evidence whatsoever. There was no evidence that putting the burden of proof on the government would be impracticable. There was no evidence that any obstacles existed to the government accessing information about our class members. There was no evidence that alternatives to detention were ineffective. There was no evidence that people detained under 1226A are dangerous or likely to abscond. And so the government has never clearly explained, much less proven, that it has any interest whatsoever in detaining people who cannot show a reason to detain. I would also point out that we put in extensive evidence about the nature of the liberty interest that's at stake in these bond hearings, even at the outset. We put in undisputed statistical evidence drawn from the government's own publicly available records that when our class members had these hearings while bearing the burden of proof, almost half of them were denied bond. The average bonds were very high. People were getting bonds in Hartford on average of greater than $28,000. About half of them who got a bond were still in jail 10 days later. They could not pay the bond. It was too high. And we also found that for those who were detained, about half the cases lasted greater than four months, and one in four cases lasted almost two years. So the interests that are at stake are very significant, and of course our individual petitioners in this case, I think, illustrate that very effectively. Mr. Puerto Brito, for example, he is someone who had not had any interaction with law enforcement for 10 years. He had a U.S. citizen wife who was disabled. He had three U.S. citizen children. He had already come forward to immigration to start the process of correcting his status, and yet he was found that he could not satisfy his burden. He was detained for months, and then ICE released him, along with our other class representatives, voluntarily after we filed this lawsuit. Their detention, that deprivation, was erroneous and unjustified, and I think that illustrates the problem with the practice that existed prior to this class action. I would also like to briefly address the standard of proof for risk of flight. The district court had adopted a bifurcated standard, clearing convincing evidence for dangerousness, preponderance of the evidence for risk of flight, and that was modeled on the Bail Reform Act. And I just want to point out that, of course, unlike the Bail Reform Act, our class members are not people who have been charged with a federal crime, so there is not that interest at the government level of responding to criminal charges. But I also want to point out that Addington, I think, has something to say here about what the standard of proof should be. We contend the standard of proof for flight risk should be clear and convincing, and the Supreme Court said that in Addington, that in a civil detention proceeding, to ensure that there is adequate confidence in the outcome and also to equitably allocate the risks of error, that there should be a clear and convincing burden on the government to show the reason why the person is detained. And also, of course, it's notable that our class members don't get many of the other procedural protections that exist in the criminal law system. So, for example, they don't have a right to counsel. They don't have a speedy trial right. So elevating the standard of proof for their detention for risk of flight, I think, is appropriate to make up, in some respect, for this lack of other protections. Lastly, I would just like to address the government's argument about the class remedy. And to be clear, the government has not challenged any of the Rule 23 factors in this case. The government has not challenged the district court's finding that an exception to the mootness doctrine applied and certification was proper. The government has not challenged the declaration that was entered in this case, providing rights to our class members. What the government seems to challenge is the appropriateness of an injunction entering in light of Section 1252F1. And I just want to respond very quickly to say that Section 1252F1 does not, by its terms, bar this injunction. It bars injunctions that restrain the operation of the statute. But this injunction relates to bond procedures. The statute contains no bond procedures. And therefore, under cases like the recent Grace case from the D.C. Circuit, this injunction does not implicate Section 1252F1. Additionally, Section 1252F1 does not apply to injunctions that operate on people who are in removal proceedings. And here, the injunction applies and provides a benefit to people who are in removal proceedings. They're having a bond hearing, so they have to be in removal proceedings. And consequently, all of our class members who receive any benefit of this injunction, as to whom the injunction operates, are people who are in removal proceedings. And therefore, the injunction does not implicate 1252F1 for that reason as well. That's time. Thank you. Mr. McFadden, you can mute your device. And Mr. Lee, you can proceed. Thank you. Really, appearing on behalf of the federal respondents, it may please the court. The due process clause does not require the government to bear the burden of proof, much less bear a burden of a heightened standard of proof or consider any special factors which were imposed by the district court. At the outset and as the background, immigration procedures are rooted in what courts have continuously recognized as the government's unique and sovereign and weighty interest. Let me ask you about how much weight you're putting on that. Suppose we were talking about U.S. citizens being detained. Do you maintain that under any circumstances U.S. citizens could be detained without the government having the burden of proving by clear and convincing evidence that there was a need to detain them? No. No, Your Honor. And if I understand Your Honor's question correctly, it parallels with the district court and the petitioner's reference to numerous non-immigration cases such as Addington and Foucha. However, the problem with that is that one, that civil commitment cases are fundamentally different, but also that those cases involved potentially permanent or indefinite commitment based on mental health issues. Here, immigration detention is inherently temporary. Let me ask you about that. I'm focusing in on U.S. citizens. Could the government detain a U.S. citizen in jail and put them in a prison for six months without having to prove something? That's not an issue here. Well, of course it isn't an issue, but we often ask questions that try to understand the contours of what your argument is. And I just want to see if you and the other side are at least on the same page as to U.S. citizens, which then makes decisive your contention that the rules are different for immigrants or for aliens. That's correct, Your Honor, and the Supreme Court has already opined on that as rulemaking is different for aliens as it is applied to citizens. So I think we've got a couple of steps that we seem to have some consensus on. One is the government couldn't do this to U.S. citizens, but two, we can't just presume that the rules are the same in the immigration context because of the government's additional interests that are implicated in that historically. In other words, which then turns the question is to why should this, the standards for detention, be one of the rules that don't apply to aliens as opposed to one of the citizen rules that do apply to aliens? What is it about these rules that cause you to say we should put them on the don't apply side of the alien versus citizen distinction? Well, Your Honor, again, if we're looking at the purpose of the detention and the backdrop that it's falling under the government's sovereign interests, that these types of procedures are committed to the attorney's discretion, which may not be prevalent in other fields and practices. Now you're talking about what Congress has done with the statute that it said it's to the attorney general's discretion, but I don't think they gave the attorney general the discretion to violate the Constitution, which would therefore seem to beg the question of what does the Constitution require? Right, Your Honor. And as the Supreme Court has ruled, so long as the attorney general's discretion on the matter continues to satisfy and reasonably advance the legitimate purposes of that statutory purpose, then the Supreme Court has affirmed the constitutionality of that temporary detention as it did in Damore and then again in Carlson and Flores. So here, the backdrop of that detention here is that it falls under the attorney general's discretion and in circumstances where no bond hearing or no individualized review has been what was offered, the Supreme Court still affirmed the mechanisms that were challenging those cases. Counsel, I think in response to Dr. Chiara's question, I understand you keep talking about the government's interests, its sovereign prerogatives, its need to be sure that individuals detained who might be a flight risk or danger to the community do not go at large. But we're not talking about releasing individuals if we change the burden of proof and the standards of proof at a bond hearing. That's all about whether an individual should be released. So I don't see why the government's interest cannot be adequately protected by bond proceedings that require the government to prove issues of dangerousness and release by a certain standard. They have an opportunity to do that and they have the resources to do that. And so I don't understand why applying these proceedings that we're talking about at these bond proceedings in any way diminish the government's sovereign prerogatives and its interest in protecting the community at large, which are all very important. So why is there some kind of irresolvable conflict between the government's interest and the kind of procedures that we're talking about? Well, Your Honor, just to take a step back, I understand the petitioner had made references to cost and whatnot, and Your Honor just referenced that as well. Well, just to point Your Honor's direction to the Supreme Court's decision in Flores, where the Supreme Court distinctly distinguished between mere administrative burdens such as costs and what have you and the statutory purpose or the regulatory purpose of the government's policy in keeping someone in custody. It's inherently different when we're discussing the government's interest. And as a practical matter, Your Honor, 1226A encompasses a large group of individuals, including recent arrivals who just showed up in the United States where the government may have limited to no information as to who this individual is, whether they have communal ties to the government and if they are a danger. The government just doesn't know. And so by shifting the burden to the government and also heightening it, it would again be in the government's interest to have the burden on the individual to demonstrate that they are not a flight risk or a danger without any heightened burden whatsoever. And just as we referenced previously, to impose any special rules of that kind is just contrary to the Supreme Court decision in Des Moines holding that the government should use the least burdensome means to accomplish its goal. And as Your Honor already acknowledged that in the Jennings decision, although it was turned on a statutory basis, it's certainly informative as to what the Supreme Court understands due process requires in 1226A specifically. In fact, although the majority and the dissent disagreed as to the statutory analysis purposes, even the dissent agreed that should a bond hearing be held pursuant to 1226A, that it should be held in accordance with customary burdens of proof and rather than the special rules that were imposed by the Ninth Circuit. And despite this, the district court still deviated from 20 years of bond procedures and bond operations by heightening the standard of proof to clear and convincing evidence for dangerousness and then preponderance for flight risk. And in essence, the district court is adopting the BRA wholesale into immigration proceedings and the district court's order essentially mirrors what criminal pretrial detention is. And that's incredibly problematic in the immigration context and for a number of reasons. First, it is well settled that criminal procedures are not readily transferable to immigration procedures. And unlike criminal detention where release is generally favorable, Congress has eliminated presumption of release for immigration detention as the Supreme Court acknowledged in both Flores and Carlson. Counselor, I want to sort of turn that argument against you in the sense, I mean, detention is detention. The experience of detention is certainly punitive. On the criminal side, there are all sorts of protections in place that immigrants do not have. One way of redressing that imbalance is to do the kind of thing that the district court did here by at least affording the detainees a bond proceeding that minimizes the risk of error in deciding whether somebody can be released without risk to the community, without risk of flight. So it seems to me that your argument to a certain extent, I think, simply enhances the argument that your opponents are making about why these procedures are all the more necessary in the immigration context. No right to counsel, first and foremost. That's a huge difference between the two proceedings. Is it not? Not necessarily, Your Honor. And that's because the courts have already recognized that constitution. Go ahead. Thank you. That courts have long recognized that. Indeed, the Constitution generally recognizes significantly less extensive procedures. So by constitutionalizing and affording special rules in order to elevate procedure protections and go beyond what the criminal detainees may be afforded is just contrary to the fundamental differences in jurisprudence between immigration and criminal procedure. And I realize I'm out of time. So if I could just sum up since I don't have a rebuttal very briefly. Sum up. Go ahead. Thank you. And with this in mind, Your Honor, and the government's, again, unique interest in the multilayered review process, the government would again submit that the procedures under 1226A is fully consistent. And as the Jennings Court has all agreed, no special rules need to be imposed to satisfy that requirement. And for these reasons, Your Honor, the government has to vacate the district court's decision and rest on our briefs. Thank you. Thank you very much, counsel. I believe Attorney McFadden has one minute. Yes. Thank you very much. I would just respond briefly to the contention that the general rule in favor of liberty only applies in the face of permanent detention. I think that the Supreme Court has not suggested in any way that the government can arrest people, put them in jail and not have to show a reason so long as the detention is not permanent. And I would just say I think Salerno is a clear indicator there that relates to people who are charged with federal crimes. And even there, they can only be detained pending trial for a limited period of time with very strong procedural protections, including the government bearing the burden of proof by clearing convincing evidence. Thank you. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.